# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00333-CV

**Michelle Lynn Bertram f/k/a Michelle Lynn Bistrup, Appellant**

**v.**

**Eric Todd Bistrup, Appellee**

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 395TH JUDICIAL DISTRICT
NO. 04-008-F395, HONORABLE MICHAEL JERGINS, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Michelle Lynn Bertram f/k/a Michelle Lynn Bistrup ("Bertram") appeals from a reformed final decree of divorce in a divorce proceeding between Bertram and Eric Todd Bistrup. In five issues, Bertram contends that the district court erred by (1) awarding Bistrup damages on his claim that Bertram breached her fiduciary duty not to infect Bistrup with a sexually transmitted disease, and (2) issuing an injunction prohibiting contact between Bertram and Bistrup's son and Brent Brigman. Because the injunction has expired by its own terms, issues challenging the validity of the injunction are moot, and we do not address them. We will reverse that portion of the district court judgment awarding Bistrup damages on his tort claim and remand the cause to the district court for further proceedings.

**FACTUAL AND PROCEDURAL BACKGROUND**

Bertram and Bistrup were married in December 1994, and their son was born in 1999. In August 2002, both Bertram and Bistrup became ill and experienced similar symptoms of headache, fever, and body ache. Bertram visited a doctor, after which she called Bistrup and told him she had been diagnosed with genital herpes. Bistrup also saw a doctor, informed the doctor of his wife's diagnosis, and received a prescription for medication used to alleviate the symptoms of herpes. Bistrup testified at trial that in August 2002 he and Bertram discussed how either or both had contracted herpes and "the blame was up in the air, who had it." At that time, Bistrup assumed that one or the other of them must have unknowingly contracted the disease prior to their marriage.

Bistrup testified that in December 2003 he discovered information that led him to believe Bertram had engaged in several extra-marital affairs. Bistrup also testified that he learned from reading Bertram's e-mail that she intended to seek a divorce from him. Bistrup initiated divorce proceedings in January 2004. Bistrup filed a first amended petition for divorce on June 16, 2004. In addition to seeking a divorce from Bertram, division of property, and resolution of issues related to conservatorship and support of their minor child, Bistrup also alleged that Bertram "breached her duty not to transmit any sexual diseases" to him and that he suffered damages as a result. Bistrup sought damages for past and future medical expenses, mental anguish, and interference with future relationships. Bistrup testified that Bertram initially denied all but one extra-marital affair, but at trial she testified that she had "sexual contact" with five other people during her marriage to Bistrup. Bistrup also claimed that Bertram had contracted herpes prior to

2

their marriage, while Bertram testified that she first learned of her condition in August 2002 after the two of them experienced similar symptoms.

After a three-day trial, the district court submitted to the jury a charge consisting of eight questions. Question 6 asked the jury, "Did Michelle Lynn Bistrup breach her duty not to transmit any sexual diseases to Eric Todd Bistrup?" The jury answered "Yes" to this question. Question 7, which was predicated on an affirmative answer to Question 6, asked the jury, "State in dollars the loss, if any, suffered by Eric Todd Bistrup as a result of the transmission of a sexual disease by Michelle Lynn Bistrup." The jury answered "$200,000."

The court entered a final decree of divorce, which, among other things, awarded Bistrup $200,000 in compensatory damages as found by the jury in answer to Question 7. Also germane to this appeal was certain injunctive relief contained in the district court's order. In the final decree of divorce, the district court permanently enjoined Bertram from "allowing any contact whatsoever between the child and Brent Brigman." Bertram filed a motion for new trial contending, among other things, that the evidence was legally and factually insufficient to support the jury findings in both Question 6 and Question 7. She also challenged the prohibition on contact between the child and Brigman on the ground that the injunction was not supported by the pleadings or evidence presented at trial. The district court subsequently signed a reformed final decree of divorce that modified the original decree to add terminating events to the injunction. Specifically, the reformed decree prohibits contact between the child and Brigman only until the earlier of two events: (1) a lawful marriage between Bertram and Brigman, or (2) the expiration of eighteen months from

the date of the reformed final decree of divorce. The district court denied the remainder of Bertram's motion for new trial, and this appeal followed.

By five issues, Bertram challenges (1) the legal and factual sufficiency of the evidence supporting the jury's finding that she breached her fiduciary duty to Bistrup; (2) the legal and factual sufficiency of the jury's finding of damages in the amount of $200,000 for past and future medical expenses, mental anguish, and interference with future relationships; and (3) the injunction prohibiting any contact between Bertram and Bistrup's minor child and Brent Brigman. We will reverse the portion of the district court judgment awarding Bistrup damages and remand the cause to the district court. Because the issue complaining of the injunction is moot, we do not address it.

**STANDARD OF REVIEW**

In a legal sufficiency challenge, we must determine whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We review the evidence in the light most favorable to the challenged finding, crediting favorable evidence if a reasonable fact finder could, and disregarding contrary evidence unless a reasonable fact finder could not. *Id*. at 821-22, 827. We sustain a legal sufficiency challenge when (1) there is a complete absence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *Id.* at 810. More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). In reviewing

4

a factual sufficiency challenge, we consider and weigh all the evidence in the record, both in support of and against the finding, and set aside a finding only if the evidence that supports it is so weak or against the great weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

## DISCUSSION

Bistrup sought damages for past and future medical expenses, mental anguish, and interference with future relationships resulting from his contraction of a sexually transmitted disease, herpes, from Bertram. The damage question related to this cause of action was submitted in broad form without objection. When a damage question is submitted in broad form it is difficult, if not impossible, to determine the amount the jury awarded for each element of damages. *City of Houston v. Levingston*, 221 S.W.3d 204, 230 (Tex. App.—Houston [1st Dist.] 2006, no pet.). To challenge a multi-element damage award, a party must address all of the elements of damages and show that the evidence is insufficient to support the entire award. *G. T. Mgmt., Inc. v. Gonzalez*, 106 S.W.3d 880, 885 (Tex. App.—Dallas 2003, no pet.). In issues three and four, Bertram challenges, as she must, the legal and factual sufficiency of each of the elements of damages that could have been included in the award—past and future medical expenses, mental anguish, and interference with future relationships.[1]

---

[1] Bistrup argues that Bertram waived her right to challenge the damage award. This argument fails as Bertram properly preserved her challenge to the legal and factual sufficiency of the evidence supporting the damage finding by including that challenge in her motion for new trial. Tex. R. Civ. P. 279; *Cecil v. Smith*, 804 S.W.2d 509, 510-11 (Tex. 1991).

***Past and Future Medical Expenses***

Bertram contends that there is no evidence to support an award of damages for past or future medical expenses. We agree. With respect to past expenses, there is no evidence of the amount of those expenses. Bistrup testified that he saw a doctor on two occasions to seek medical treatment and advice regarding his condition, but did not say how much, if anything, he paid for those visits, nor does the record contain evidence of the cost of the visit or the medicine the doctor prescribed. To recover past medical expenses, a claimant must present evidence of the amount of the expenses as well as prove that those expenses were reasonable and necessary. *Doctor v. Pardue*, 186 S.W.3d 4, 20 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). Absent from the record is any evidence quantifying past medical expenses Bistrup claims to have incurred.

To recover future medical expenses, Bistrup was required to show that there is a reasonable probability that medical care will be necessary in the future and the reasonable cost of such care. *Rosenboom Mach. & Tool, Inc. v. Machala*, 995 S.W.2d 817, 828 (Tex. App.—Houston [1st Dist.] 1999, pet. denied). With regard to future medical expenses, the only evidence arguably touching on this issue is Bistrup's statement that:

> [T]his is a lifelong thing. . . . Does this complicate another illness?
> If I get sick on one case, does this have anything to do with my
> immune system or my ability to fight anything else off?

In his brief, Bistrup concedes that this evidence is "vague" and "somewhat speculative." This testimony does not constitute probative evidence tending to show that Bistrup will probably incur future medical expenses as a result of his condition, and it fails, as a matter of law, to quantify the

6

reasonable cost of such care.  The damage award can not be supported by any claim that it was compensation for past or future medical expenses.

### *Mental Anguish*

Bertram contends that the evidence is legally insufficient to support an award of damages for mental anguish because Bistrup presented no evidence of compensable mental anguish. When reviewing the legal sufficiency of an award of damages for mental anguish, we "must distinguish between shades and degrees of emotion." *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995).  The essential distinction is between lesser reactions and degrees of emotions such as disappointment, embarrassment, and anger, for which no compensation is allowed, and more extreme degrees of emotions such as severe disappointment, wounded pride, and indignation, which may be compensable when coupled with evidence that these emotions disrupted the plaintiff's daily routine. *Saenz v. Fidelity & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996); *Parkway*, 901 S.W.2d at 444.  An award of mental anguish damages will survive a legal sufficiency challenge when the plaintiff has introduced direct evidence of the nature, duration, and severity of his mental anguish, thereby establishing a substantial disruption in the plaintiff's daily routine. *Parkway*, 901 S.W.2d at 444.  When the claimant fails to present evidence of the nature, duration, or severity of his anguish, the supreme court has directed that we examine the record for any evidence of a "high degree of mental pain and distress" that is "more than mere worry, anxiety, vexation, embarrassment, or anger." *Id*. (quoting *J. B. Custom Design & Bldg. v. Clawson*, 794 S.W.2d 38, 43 (Tex. App.—Houston [1st Dist.] 1990, no writ)).

7

Applying these substantive guidelines within the parameters of the *City of Keller* legal sufficiency standards, we conclude that the evidence in this case is not legally sufficient to support the award of compensatory damages for mental anguish. Having reviewed the record, we conclude that Bistrup made no showing of either a substantial disruption in his daily routine or a high degree of mental pain and distress. Bistrup points to the following testimony as the entire evidence supporting an award of damages for mental anguish:

> [T]his is a lifelong thing. This is not something that I can just will away. I can't spend any kind of money to get rid of it, and I'm going to have to deal with this. I don't know what things are going to happen in my life that this is going to be an issue. Does this complicate another illness? If I get sick on one case, does this have anything to do with my immune system or my ability to fight anything else off? There are a lot of different things. Now I don't know if my son's infected. I don't know if when he gets to an age when he's going to be sexually active, when do I have to have that conversation with him to say, "We've got to get you tested, and, oh, by the way, here's something you're going to have to deal with for your lifetime."

The foregoing does not constitute evidence of either past or anticipated future disruption in Bistrup's daily routine. Nor does this testimony constitute evidence of a high degree of mental pain and distress that is more than worry, vexation, embarrassment, or anger. There is no evidence of the nature, duration, or severity of Bistrup's mental anguish that could establish a substantial disruption in his daily routine. The most that can be drawn from his testimony is that Bistrup is concerned about how the sexually transmitted disease might affect his health and worried about a possible future conversation with his son.

In both *Saenz* and *Parkway*, the Texas Supreme Court held that similar testimony was insufficient to support an award of damages for mental anguish. In *Saenz*, statements that "I was

8

worried," "I was worried also that we were going to lose our house," and "we couldn't afford the medical bills" failed to establish mental anguish. *Saenz*, 925 S.W.2d at 614. The plaintiffs "proved worry, anxiety, vexation and anger, but failed to prove that their distress involved more than these emotions." *Id.* In *Parkway*, the supreme court held that testimony that "I was hot," "I was very disturbed," "it changed our lifestyle," and "it was just upsetting" amounted to mere expressions of "anger, frustration, or vexation" insufficient to support the conclusion that the plaintiffs suffered compensable mental anguish. *Parkway*, 901 S.W.2d at 445; *see also Gunn Infiniti v. O'Byrne*, 996 S.W.2d 854, 861 (Tex. 1999) (plaintiff's testimony regarding his embarrassment, ridicule from friends, and feeling publicly humiliated did not rise to the level of "a high degree of mental pain and distress" that was more than "mere worry, anxiety, vexation, embarrassment, or anger").

The evidence Bistrup relies upon is similar to that in *Saenz* and *Parkway*. There is simply no testimony or other evidence that Bistrup suffered compensable mental anguish. *Compare* the evidence in the present case *with Fifth Club v. Ramirez*, 196 S.W.3d 788, 797-98 (Tex. 2006) (assault victim's testimony that he "continued to be depressed, humiliated, non-communicative, unable to sleep and angry, continued to have headaches and nightmares, and that his daily activities and his relationship with his wife and daughter continued to be detrimentally affected almost two years after the incident" was legally sufficient to support mental anguish damages); *Latham v. Castillo*, 972 S.W.2d 66, 70 (Tex. 1998) (plaintiff's testimony that conduct "made me throw up . . . sick, nervous, mad," "hurt me a lot," and "I was devastated, I felt physically ill" was some evidence of a "high degree of mental pain and distress").

9

Furthermore, not only must the record contain evidence of the existence of compensable mental anguish, there must be some evidence to justify the amount of the award. *Saenz*, 925 S.W.2d at 614. The jury may not simply "pick a number and put it in the blank," but must determine an amount that "fairly and reasonably" compensates for mental anguish "that causes 'substantial disruption in . . . daily routine' or a 'high degree of mental pain and distress.'" *Id.* (quoting *Parkway*, 901 S.W.2d at 444). In *Saenz*, the Texas Supreme Court recognized that while "the impossibility of any exact evaluation of mental anguish requires that juries be given a measure of discretion in finding damages, that discretion is limited." *Id.* Even if the record here contained evidence of compensable mental anguish, which we conclude it does not, there is no evidence that $200,000 would be fair and reasonable compensation therefor. Rather, the jury appears to have simply adopted the unsupported damage figure requested by counsel for Bistrup in her closing argument.

We conclude that, while Bistrup's testimony shows that he experienced worry, frustration, and perhaps anger, it does not support the conclusion that Bistrup suffered the level of mental anguish that is compensable under Texas law. We hold that the evidence of mental anguish was legally insufficient to support an award of damages.

### Interference with Future Relationships

Bertram likewise challenges the legal sufficiency of the evidence to support an award of damages to compensate Bistrup for interference with future relationships. On appeal, Bistrup argues that "the largest portion of the award was most likely from Mr. Bistrup's claim for

10

interference with future relationships." The only evidence Bistrup relies upon to support the award is his testimony that:

> Over and above that, not that I'm very fond of relationships right now and very trusting of women, but if I make the assumption that I get past this and I get into some kind of sexual, committed relationship with any other woman, that's a show-stopper. I don't know how many women hearing that, if I take the responsibility to be honest and up-front with them prior to engaging in sex, how many of them will turn around and walk away. It's not worth it. I don't know.

There is no other evidence in the record regarding how Bistrup's condition might affect his future relationships. Assuming, without deciding, that a claimant could present evidence that would support an award of damages for "interference with future relationships," we conclude that in this case, Bistrup has not done so. His testimony in this regard is far too speculative and conditional to constitute evidence supporting an award of compensatory damages. We conclude that the evidence of interference with future relationships in this case is legally insufficient.

Because we agree that there is no evidence in the record to support the damages awarded in answer to Question 7, we sustain Bertram's third issue challenging the legal sufficiency of that finding. We conclude that Bistrup is not entitled to recover damages from Bertram on his claim that she breached her duty not to infect him with a sexually transmitted disease.

Ordinarily, sustaining a legal sufficiency challenge results in rendition of "the judgment that the trial court should have rendered." Tex. R. App. P. 43.3. However, when, as here, the appellant has preserved a legal sufficiency challenge only in a motion for new trial, the court of appeals is required to remand the cause to the district court rather than render judgment. *See Werner v. Colwell*, 909 S.W.2d 866, 870 n.1 (Tex. 1995); *Horrocks v. Texas Dep't of Transp.*,

11

852 S.W.2d 498, 499 (Tex. 1993); *El-Khoury v. Kheir*, 241 S.W.3d 82, 90 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). Consequently, although we sustain Bertram's legal sufficiency challenge, we will remand the cause to the district court for further proceedings.

**Breach of Fiduciary Duty**

In her first and second issues, Bertram challenges the liability finding in Question 6, arguing that there is factually and legally insufficient evidence that she breached a fiduciary duty to Bistrup. Bertram contends that Bistrup failed to demonstrate that he actually has a sexually transmitted disease and, if he does, has failed to provide sufficient evidence to show that he contracted it from her. Because we have concluded that the record contains no evidence to support an award of damages, we need not reach the issue of whether Bertram breached her fiduciary duty to Bistrup. *See Capitol Metro. Transp. Auth. v. Central of Tenn. Ry. & Navigation Co., Inc.*, 114 S.W.3d 573, 584 (Tex. App.—Austin 2003, pet. denied). Because Bertram likewise preserved her challenge to the liability finding only in her motion for new trial, the only relief to which she could be entitled in this appeal is a remand for further proceedings. Having sustained Bertram's third issue, we have already granted Bertram that relief. Consequently, we need not address Bertram's first and second issues.

**Propriety of Injunction**

By her fifth issue, Bertram complains that the district court exceeded its authority and erroneously entered an injunction prohibiting contact between Bertram and Bistrup's minor child and Brent Brigman. The reformed final decree of divorce modified the terms of the prohibition such that

it terminated on the first to occur of either (1) the legal marriage of Bertram to Brigman, or (2) the expiration of eighteen months from the date of the reformed final decree of divorce. The reformed decree was signed on June 15, 2005; therefore the prohibition Bertram complains of terminated on December 15, 2006 and is no longer in effect.[2] Because the portion of the injunction Bertram complains of has expired by its own terms, issue five is moot and we do not address it.

## CONCLUSION

We hold that the evidence is legally insufficient to support the jury finding of $200,000 in compensatory damages resulting from Bistrup's contraction of a sexually transmitted disease from Bertram. Consequently, we sustain Bertram's third issue. We reverse that portion of the district court judgment that awards Bistrup $200,000 as damages for Bertram's breach of a fiduciary duty to him. Because Bertram's only challenge to the legal sufficiency of the evidence was in her motion for new trial, we remand this cause to the district court for further proceedings.[3]

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Reversed and Remanded

Filed: April 22, 2009

---

[2] In her reply brief Bertram informed the court of a second reason that the prohibition has expired—her marriage to Brigman.

[3] We express no opinion as to what proceedings, on remand, the district court may entertain.

13